Good morning. Good morning. I'm pleased to court counsel. My name is Richard Wall. I represent Deborah Cummings. That's the way she prefers to be pronounced. I'd like to reserve two minutes for rebuttal. Your Honors, I'd first like to just briefly address the issue of ineffective assistance of counsel that was raised. Should we even adjudicate it here? You don't make any mention of it in your reply brief, and shouldn't that just be left to collateral review? Here's what I'd like to say about that. If the right to assistance of counsel means anything in a criminal case, it means that when you walk into that courtroom, you're not alone. There's at least one person on your side. And I think the record in this case shows that at some point during this trial, Ms. Cummings' counsel essentially turned against her, pointed the finger at her as being responsible for everything that had happened, completely absolved her co-counsel or co-defendant by doing so, and left Ms. Cummings sitting there completely alone. Well, really what we have is that outburst during closing argument, right? But we don't really know, we don't know what went on between the two of them outside of, you know, and obviously when your client, that's every lawyer's nightmare when your client, like, when you're making your closing argument starts, you know, interrupting and saying things in front of the jury, you just want to put, you know, you want to put a bag over their head and wish that it, you know, had never happened. I understand that. There is some additional information that was in the sentencing, the record of the sentencing hearing, where Ms. Cummings explained some of what was going on between her and her counsel during trial, and her counsel did not dispute her version of what had happened. So there is some additional record there. I just wanted to bring that up. I realize it's a difficult issue to address on direct appeal. The second issue I'd like to address is the sufficiency of the evidence to prove the materiality of the alleged false statement here. The statement was, it was actually, I think, three statements that she didn't recognize a person named Kirk Lyons on the videotape, that she hadn't met him, and that she didn't know him. These were three statements that were made in the course of an investigation that lasted for a couple of years, which Ms. Cummings was, had numerous contacts with the FBI and was questioned numerous times. At trial, these were the only three statements that were alleged to be not true. Essentially, the rest of the government's case was built primarily on Ms. Cummings. Doesn't it affect what the government does, though? Wouldn't the government's investigation have taken somewhat different directions if they'd known that there's a long connection between the two of them? I believe, Your Honor, that's what was not shown here by the evidence. First of all, these statements don't have anything intrinsic about them that would affect the government. Well, it looks like the court, and arguably the jury, could have believed at the end of this that your client was essentially a woman scorned, and essentially, you know, made this whole thing up from the gate, and the fact that she denied knowing this Mr. Lyons, or that it, I, don't we have to look at the full context, as Judge Canby said, of the FBI investigation? And if we thought that, but for the fact, if there's, if you could regularly, if someone could find that this never would have occurred had she not made that statement, would it then be material? If that imprints could be made? Certainly, but I don't think you can find that on this record, because if the only statements she had made were that she didn't know Kirk Lyons, there would have been nothing to investigate. There's nothing about that statement that the FBI would have any interest in but for everything else that happened here. There's no intrinsic value to these statements that would cause any government agency to make any sort of decision, whether any person happens to know Kirk Lyons. The point here is that because those statements don't have any intrinsic value in terms of, to the, to a federal government agency, or any natural tendency by themselves to influence a government agency, you have to look at the context. And if you look at the context of just those statements, all we have is the agent showing her a videotape. He never explains why he even shows this to her. She's already told him she has mailed things to Kirk Lyons, that she knows who Kirk Lyons is. She's told him she spoke to Kirk Lyons on the phone before this interview happens. He doesn't explain why he asked her these questions. But as it turns out, what she attended his wedding at the, not the Aryan Brotherhood, but the Aryan Nation or whatever. Again, that may go to whether or not the statements were true or false. And I think there's even some question here in terms of exactly what was said and what was meant. He says that she claims she doesn't recognize the person on the video. That's a very strange statement to make because he also says on the video it says this is Kirk Lyons. So why would Ms. Cummings say, I don't know who that person is, when the video itself tells you it's Kirk Lyons, according to Agent McEwen's testimony? The jury never saw the video, so we don't have the video. But that's what he testified. And if she says, I don't know him, what does she mean? Does she mean she doesn't know him that well? It was eight years before that she was at this wedding. We don't know him. That's kind of a, that's a tough argument. I don't know him. I don't know. I mean, that's, if we were doing statutory construction, I don't know him means I don't know him, not I don't know him well. No, I'm, we're not arguing that there's not enough evidence for the jury to find that the statements were false. What I'm arguing is that it's not, there's not enough evidence here to prove beyond a reasonable doubt that they were material. Again, even if these are false statements, there is no explanation from the agent. Well, let's, okay, if we focus it, let's say if we focus it, if a reasonable inference could be made that the FBI wouldn't have done this investigation but for that lie. Let's accept that that's a lie. Would then that be material? Yes, but again, you cannot make that inference. Right. I realize you're arguing otherwise. So it really kind of comes down to that. Keep in mind that she made many other statements that the agent here acted on and really started this investigation. Her ex-husband, Mr. Davila, made many statements and admitted to the FBI that he had classified documents in his storage shed and had taken classified documents. I mean, there was a lot of, many other things going on in this investigation. This was one little part of it with really, on this record, nothing to explain why he was asking her those questions at that time, what he did in response to those questions. The government makes this argument that they were trying to locate or determine other potential co-conspirators and locate missing documents. If we're looking at everything, is there any relevance to the fact that the jury found Mr. Davila not guilty? With regard to this particular charge and whether or not there's enough proof, no, not at all. Again, it's not whether they believe in any other statements she had made. She was not charged with making other false statements, only these statements. That's all she was charged with. So they have to show that these statements were material. And I really believe that the evidence doesn't prove that that's the case. There was so much else going on in this. What changed anything that they did or even could have changed anything that they did based upon the statements? The government makes this conclusionary statement about what the objects of the investigation were. But even in their briefing, they don't tie those two together in any way. They don't say how these statements would have affected that goal or how the FBI went about trying to attain that goal. You have two minutes. Thank you. May it please the Court. Counsel, my name is Stephanie Whitaker. I'm here representing the United States Attorney's Office for the Eastern District of Washington. Your Honors, I would like to first start with I think where the bulk of the questions came from, and that is this issue of sufficiency of the evidence regarding the materiality of the false statement produced. Again, Your Honors, this statement has to be viewed not only in its context but its timing. As the United States has argued from the beginning, this particular statement was absolutely material because it was offered at the onset of this investigation by the defendant who stated that she had mailed classified documents to this individual and his organization. That started off a series of events on behalf of the FBI, not only to try and determine what classified documents might have been mailed, if she even in fact had access to classified documents, through her then ex-husband, Rafael Davila. Does her knowing the person make it more or less likely that she mailed the classified documents? I think the fact that she stated she didn't know Kirk Lyons had such an effect on the relationship with Mr. Lyons that spanned over 10 years old, a relationship specific to the Aryan Nation, and part of that materiality became her misleading and misfeeding the FBI about Mr. Davila's connection to the Aryan Nation versus her own personal connection. And this is just one of the statements that relates directly to her personal connection to Aryan Nations and not Mr. Davila's. Had the FBI known that she was the one, in fact, that was connected to her? Apparently everyone thought that Mr. Davila was all wound up in this as well, which the jury didn't obviously agree with that. And I don't think the judge did either. The judge at the end just decided that Ms. Cummings was basically a woman scorned, a liar, and had cooked this whole thing up and took the FBI down. And then, you know, I don't know. I kind of had the impression that the judge even actually thought that Mr. Davila was actually not only not guilty but innocent. Your Honor, I appreciate the Court's statements. And this was such a difficult and long investigation. But part of what was so difficult is that we had statements provided by Ms. Cummings, and some of these statements we could corroborate. So we have all these statements being fed by Ms. Cummings, some of which we can corroborate, some of which we cannot, some of which the co-defendant, Rafael Davila, did, in fact, corroborate himself in providing a written statement that he, in fact, had classified documents in the storage shed. Part of the problem the FBI had from the beginning in this case is everything was gone by the time they even knew anything happened. They had to go back and try and recreate an entire history, a military history by Mr. Davila that was over a decade long, to try and recreate what he might have had access to, to review his statement in the context of Ms. Cummings' statements and much of the misinformation that she was feeding. And so I appreciate Judge Whaley's position. I think the United States' position, respectfully, is far different than that. I don't know that the jury completely agreed that there was no classified documents that were missing. I think that they did, in fact, agree that there were. We could not prove which specific documents were gone. And that was part of it. He comes off as a cad. You know, he's married to two women at the same time or whatever. And so that, you know, but it seemed that the FBI got this sort of linear view and was intent on getting him. And so, you know, I wonder if that has anything to do, I mean, did they even, you know, I mean, did they consider that to be material? I think what the FBI considered to be material was the fact that when they interviewed Rafael Davila, he confirmed he had classified documents. So then you have to go back and review all of the statements that Ms. Davila and Ms. Cummings provided in that particular context and say, okay, she said she mailed six to eight boxes of classified documents. Her ex-husband says I had classified documents I wasn't supposed to have in the storage shed. And now we've got to go back and figure out what they were and where they went. And that is why the statement as to Mr. Alliance is so material. Because had she indicated on the onset of that interview that she was the one that had the relationship to the Aryan Nation, then the FBI's direction in this case would have been totally different. They ended up doing a search warrant on Ms. Cummings' apartment a year after, almost a year after those initial statements. I think some of those actions would have done been done much earlier had that particular statement from Ms. Cummings not been made. Kennedy. If I understand your opponent's argument, it is that there's no evidence of that. In other words, the agent didn't say, well, I'd have done this differently if I'd only known that, and so on. Well, I don't think that the agent has to say that. Can we just infer that? Your Honor, specifically, I don't think the agent has to spell out A, B, and C exactly. I think the jury, reviewing all of the evidence provided over that two-week trial, can certainly read the evidence in totality and determine whether that statement was material. The fact that Agent McCune may not have said the magic words, as defense counsel suggests, does not make the statements immaterial. I think that in the context to which the jury was provided all of the evidence and the fact that actual physical evidence was discovered to prove that not only was the statement false, but that her relationship with the Aryan Nation was material. So what did the government argue as materiality? What was the government's argument on materiality to the jury? The government's argument on materiality is just as we've argued to the Court now, in that the whole scope of the investigation and the manner in which it was conducted would have gone a different direction or would have had a different effect had we understood at the onset Ms. Cummings' true relationship with the individuals she said she mailed the classified documents to and received cash and funds. I think the whole direction in which the investigation initiated might have been different. We've never denied, nor do we ever believe that there was not classified documents. We believe, in fact, that there were, but we will never know exactly the extent of what was mailed or what was possessed, because by the time we got involved, it was already gone. Your Honor, with respect to the ineffective assistance of counsel, Your Honor, as the United States has represented in its brief, I think that there has to be the initial inquiry as to whether that issue is even right for this Court to review. I think the record before this Court is wholly insufficient for this Court to make that determination. I think that there's nothing within the record that, on its face, establishes that the representation was so inadequate as to justify a direct review at this time. I think that the record would have to be built for the Court to truly understand. As the Court has intimated, this was a complicated case. There was a lot of strategy involved. In fact, a case that I think I still have some reaction to, even after so many years, it was a very difficult case. Defense counsel was very involved. There was all kinds of strategy that was represented to, during the course of the SEPA hearings, during the course of the two years that the case was litigated prior to going to trial. And I don't think that defense the defendant has submitted before this panel now anything to support ineffective assistance of counsel to justify a direct review at this time. The Appointee didn't mention it in oral argument, but he's argued in his brief that the sentence was unreasonably long. Your Honor, I think respectfully, Judge Whaley, having sat through the totality of this particular case, did exactly as this Court instructs him to do, and that is to not only apply the guidelines, but also to apply and review all of the factors. In this particular case, you cannot review that one statement or count of conviction in advance. Well, he thought she was a liar. Is that enough to go about the guidelines here? I think it's far beyond what Judge Whaley constituted as false statements or characterizing her as a liar. I think he had to review that in the totality of the case. He thought she made the whole thing up, right? She – I believe that Judge Whaley represented that her false statements had a direct effect on the United States actions and belief that classified documents were missing. I think that Judge Whaley did provide the caveat that he was not present, does not know all of the things that the government knows, but certainly that Ms. Cummings was responsible for a house of cards that created a tumbling effect. And that, in and of itself, took the case outside of the heartland of cases. And I think this case most certainly is outside the heartland of cases. Well, it's outside the heartland, but is it by sixfold? I mean, that's a huge jump from the guideline range. And, Your Honors, part of your responsibility is to review the reasonableness of that sentence, but that is also task to the district court to do in light of application of all the factors. And district court Judge Whaley, having sat through the totality of this case, reviewed those factors and believed that such a departure was warranted because we are talking about an individual who was representing false facts and statements relative to the national security of the United States. That is not something that is trivial or that can be viewed just as a statement regarding her knowledge of Mr. Lyons. It has to be viewed in totality of the effect it had on the entire judicial system and all of the parties, and I believe that's what district court Judge Whaley was attempting to do and articulated by application of those factors. Your Honors, I believe I have about 29 seconds left, so I'm not sure. It doesn't appear anyone's got any additional questions. Thank you very much. Thank you. You might want to address the reasonableness of the sentence. Yes, I will. Just very briefly on the issue of the materiality, our argument is that the explanation that was just given to you by the government is not in the record. It's really the jury to come up with this explanation that you've heard today would have to speculate about what was going on in the minds of Agent McEwen and other FBI investigators. It's not in the record. If you look at United States v. Jang, it says there must be clear evidence of what was said and a full appreciation for the context. Clear evidence, and that's not here in this case. As far as the sentencing goes, what Judge Whaley did here was he sentenced Ms. Cummings because of other lies that he thought she told the FBI. In fact, he expressly stated that, that he thought the cumulative effect not only of the lie that she was convicted of saying, but many other statements that he believed were not true. The cumulative effect of those was such that he felt she deserved an exceptional sentence. The problem with that is that 3553 and Blakeley do not allow the judge to decide that someone committed some other crime and punish them additionally for that. You can only punish for the crime of which you've been convicted by the jury. If Judge Whaley had limited his comments to, I believe this lie that you were convicted of caused this effect, and that effect was such that you deserve an exceptional sentence, that would be different. He didn't do that here. He said it was these other lies that he believed she had stated. And he is going way beyond the 3553 factors in doing that. He's also violating Ms. Cummings' Sixth Amendment right to have those issues, whether or not she's told other lies and whether or not those other lies impacted a Federal agency. She has a right to have that determined by a jury, not by the judge. Well, the jury's verdict would have permitted, statutorily, a sentence up to five years. That's correct. But again, when you're sentencing, you have to look at 3553. 3553 doesn't ---- I'm sure you were just talking about the right to have the jury determine something. And it seems to me the jury's verdict would have permitted a five-year sentence. That's true. Statutorily. That's true. But under Blakeley, the judge can't use as a factor other uncharged or un- Well, that was true back when the guidelines were mandatory. But I'm not so sure it's true now. Well, okay. If I could have a moment. This is one of these areas that I think is really still problematic. Blakeley tried to fix, I believe, what was a problem with the guidelines in terms of what the guidelines calls relevant conduct. The guidelines, when it talks about relevant conduct, really very often talks about other crimes, other acts that could be crimes, in addition to the crime for which someone's been charged and convicted. Blakeley looked at that, and it wasn't a guideline case, but it looked at a similar statutory scheme and said that's a problem because what you're doing now is you're having a judge decide whether this other crime was committed and adding punishment on that determination. And Blakeley said that's not allowed, even if the guidelines allow it, because that violates your Sixth Amendment right. That's exactly what happened here. Judge Whaley decided that she had committed additional crimes other than the one for which she was convicted, and he punished her for those crimes. All right. Thank you for your argument. Thank you. This matter will now stand submitted. Rodolfo Trevino III v. John.
judges: Canby, Hall, Callahan